IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GILBERT M. MEDINA, JR.

    Plaintiff,

v.                                                                                    Civil No. 04-171 WJ/DJS

JUAN CARLOS LORENZO, an individual,
KENNETH M. HOROWITZ, KENNETH M.
HOROWITZ, P.C., GLAST, PHILLIPS &
MURRAY, P.C., and INTERMEX
MANAGEMENT, INC.,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

    THIS MATTER comes before the Court pursuant to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [Docket No. 12]. Having reviewed the submissions of the parties and being otherwise fully advised, I find the motion is well taken and will be granted.

**BACKGROUND**

    Plaintiff's Complaint alleges various ERISA violations by Defendants. They filed the instant motion to dismiss for lack of personal jurisdiction arguing that the exercise of personal jurisdiction over any and all of the Defendants by this Court would offend traditional notions of fair play and substantial justice because none of the Defendants has had contact with New Mexico. A brief overview of the relationships of the Defendants to one another, to other entities, and to the Plaintiff is necessary to the understanding of the parties' arguments on the issue of personal jurisdiction.

Plaintiff resides in California but reports that he is a domiciliary of New Mexico.  Plaintiff is a former employee of Peppers Unlimited, Inc. ("Peppers").  Plaintiff is also a minority shareholder in Peppers.  As an employee of Peppers, Plaintiff participated in a 401k retirement plan. Intermex Management, Inc. ("Defendant Intermex") administers the Peppers 401k plan. Defendant Juan Carlos Lorenzo (Lorenzo) **indirectly** owns 75% of 87% of Defendant Intermex stock, but does not **directly** own any Defendant Intermex stock.  Lorenzo directly owns 12.25% of an entity called Grupo Ferzo which, in turn, owns 70% of Peppers.  Lorenzo is a director of Peppers, a director of Defendant Intermex, and an employee of Defendant Intermex.  Peppers conducted business in New Mexico by distributing food products in grocery stores within the state.  Peppers is not named as a defendant in this action.

Plaintiff is involved in litigation in a Texas state court concerning the operation of Peppers.  That litigation will be referred to herein as the "Peppers Litigation."  Plaintiff asserts that the Peppers Litigation was initiated by him in his capacity as a shareholder of Peppers.  It appears from the record in this matter that the law firm of Glast, Phillips & Murray, P.C. (Glast) represents the defendants in the Peppers Litigation.  It also appears that the defendants in the Peppers Litigation include many of the same defendants named in this action including Kenneth M. Horwitz (Horwitz), Kenneth M. Horwitz, P.C. (Horwitz, P.C.), Glast,[1] and Lorenzo.

In March 2003, during the pendency of the Peppers Litigation, Plaintiff attempted to obtain the funds held in his Peppers 401k plan.  At that time, Plaintiff was represented by counsel in the Peppers Litigation.  On April 9, 2003, Horwitz sent a letter to Plaintiff's counsel in the

---

[1] It appears from Glast's letterhead contained in the record that Horwitz, P.C. is a professional corporation within the professional corporation of Glast.

Peppers Litigation informing him that Defendant Intermex could not release the funds in the 401k plan because Plaintiff was involved in divorce proceedings, and that the funds could not be released until a Qualified Domestic Relations Order (QDRO) was sent to the plan administrator. Plaintiff is now acting *pro se* in the Peppers Litigation because he was unable to pay his attorney.

Pursuant to Plaintiff's divorce proceedings in California, the California court issued a Qualified Domestic Relations Order (QDRO) on December 12, 2003.  On January 14, 2004, Plaintiff, through New Mexico attorney Ahmad Assed (Assed), sent a copy of the QDRO, a benefit payment request, and a QDRO assignment authorization form to Glast to the attention of Horwitz, P.C.  The letter accompanying the documents explains that the items were sent to Horwitz, P.C. based on correspondence from Horwitz requesting that Plaintiff have no direct contact with anyone at Defendant Intermex, including the 401k plan administrator, due to the Peppers Litigation.[2]  On January 17, 2004, Horwitz sent a letter to Assed in New Mexico stating that the QDRO could not be accepted by the plan administrator because it may have been altered by Plaintiff after it was issued by the California court.  The letter also stated that the other documents submitted by Plaintiff could not be accepted by the plan administrator because they were incomplete.  This letter was sent only to Assed and was not sent directly to Plaintiff.

On February 23, 2004, Deborah L. Perry of the U.S. Department of Labor, Employee Benefits Security Administration, sent a letter to Horwitz via facsimile.  The letter notified Horwitz that a complaint had been made regarding the denial of Plaintiff's request for distribution of plan benefits.  The letter informed Horwitz that, under ERISA, any rejection of a QDRO must

---

[2]The correspondence from Horwitz dated January 5, 2004 is also in the record and directs Plaintiff to have no contact with Intermex Management, Inc., Intermex Products USA, Ltd. or any company personnel except through Horwitz, P.C.

be accompanied with notice of the specific, detailed reasons for the rejection and a description of any modifications or additions necessary to qualify the order as a QDRO.  The letter also informed Horwitz that ERISA requires any such notice be sent directly to the plan beneficiary and alternate payee.  On March 5, 2004, Horwitz sent a letter directly to Plaintiff, directly to Plaintiff's former wife, and to Assed giving a detailed explanation why the QDRO submitted by Plaintiff was rejected.

     Plaintiff's Complaint essentially alleges that the Defendants are interfering with his right to distribution of his 401k plan benefits because of the Peppers Litigation.  With respect to Horwitz, Horwitz, P.C., and Glast, Plaintiff alleges that their conduct in responding on behalf of the plan administrator to his requests for plan benefit distribution places them in the capacity of a fiduciary of the plan, as such they must act for the benefit of plan beneficiaries including himself, and, as opposing counsel in the Peppers Litigation, they had a conflict of interest and breached their fiduciary duty.  Plaintiff alleges that Defendant Intermex and Lorenzo acted as fiduciaries for Plaintiff when they caused to have mailed to Assed in New Mexico the various letters denying Plaintiff's request for distribution of the 401k plan benefits.  According to Plaintiff's Complaint, all Defendants are involved in a scheme to deny Plaintiff his right to distribution of his benefits under the 401k plan and thus deny him the ability to obtain counsel to represent him against them in the Peppers Litigation.  While Defendants Horwitz, Horwitz, P.C. and Glast acknowledge that Plaintiff was instructed to have no contact with the 401k plan administrator except through counsel, and the record is clear that the only communications to Plaintiff regarding his requests for his 401k funds were made by Horwitz or Horwitz P.C. on Glast letterhead, these Defendants deny they acted in a fiduciary capacity with regard to the 401k plan.

**DISCUSSION**

To obtain personal jurisdiction in a case based on federal question jurisdiction, it must be shown that the applicable statute potentially confers personal jurisdiction by authorizing service of process on a defendant and that the exercise of jurisdiction comports with due process. Peay v. Bellsouth Medical Assistance Plan, 205 F.3d 1206, 1209 (10th Cir. 2000). This case is brought pursuant to the Employee Retirement Income Security Act (ERISA) which provides:

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

29 U.S.C. § 1132(e)(2). There is no dispute that this statutory language authorizes nationwide service of process. Thus, so long as due process requirements are met, this Court has personal jurisdiction over the Defendants.

Because this case is brought pursuant to a statute authorizing nationwide service of process, Fifth Amendment due process standards apply. See Peay, 205 F.3d at 1210. The Fourteenth Amendment requirement that a forum be fair and reasonable is equally applicable to the Fifth Amendment due process analysis. Id. at 1212. Thus, a court must analyze the extent of a defendant's contacts with plaintiff's chosen forum. Id. However, a federal court must also consider whether a defendant's liberty interest are actually violated by having to litigate the federal claim in the particular forum. Id. The burden is on a defendant to show an actual violation of his liberty interest by showing that the exercise of jurisdiction in the plaintiff's chosen forum will "make litigation so gravely difficult and inconvenient that he unfairly is at a severe

disadvantage in comparison to his opponent." Id. (citing Burger King, Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985)).

In analyzing whether a defendant has made the requisite showing of constitutionally significant inconvenience, a court should consider several factors including: (1) the extent of the defendant's contacts with the place in which the action was filed; (2) the inconvenience to the defendant including consideration of the nature, extent and interstate character of the defendant's conduct, the defendant's access to counsel, and the defendant's distance from the forum; (3) the probable location of discovery for the particular case; (4) judicial economy; and (5) the extent to which a defendant's activities routinely have an impact beyond the border of his domicile. Id.

The Tenth Circuit did not adopt the "national contacts test" from other circuits which essentially allows personal jurisdiction over a defendant subject to nationwide service of process so long as the defendant has minimum contacts with the United States. Id. at 1211. However, the Tenth Circuit emphasized that "it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern." Id. at 1212. The court further noted that "in this age of instant communication and modern transportation, the burdens of litigating in a distant forum have lessened." Id. at 1213 (internal citations omitted).

With regard to the first factor, the extent of a defendant's contacts with the forum, Peay indicates that the Court should conduct the minimum contacts analysis put forth in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny. See Peay, 205 F.3d at 1211-13 (citing to International Shoe, and Burger King Corp., and noting that the Firth and Fourteenth Amendments are virtually identical, and holding that the defendant in Peay had sufficient contacts

6

with the forum because it rendered benefits in the forum so should have known that a dispute over benefits could arise in the forum).

Under traditional minimum contacts analysis, a defendant with systematic and continuous contacts with a forum might be held to be subject to the jurisdiction of the courts of that forum for suits not arising from those contacts. See Burger King Corp., 471 U.S. at 472-73 n. 15; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984) ("Even when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its in personam jurisdiction when there are sufficient contacts between the State and the foreign corporation."). When a defendant does not have systematic and continuous contact with a forum, a controversy must be related to or arise out of a defendant's contacts with the forum, and the "relationship among the defendant, the forum, and the litigation is the essential foundation of in personam jurisdiction." Helicopteros, 466 U.S. at 414 (citing Shaffer v. Heitner, 433 U.S. 186 (1977)).

With regard to minimum contacts analysis, a defendant's random, isolated or fortuitous contacts will not satisfy due process requirements. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984). A defendant must have deliberately and purposefully directed its activities toward a forum. See Burger King Corp., 471 U.S. at 475-76. A defendant's contact with a forum must be such that he should reasonably anticipate being haled into court within that forum. World-Wide Volkswagen v. Woodson, 444 U.S. 286, 297 (1980). "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a "substantial connection" with the forum State. Burger King Corp., 471 U.S. at 475.

Defendants posit that none of them have conducted any activity directed at or into New Mexico.  They further urge that a lack of any contact with New Mexico makes exercise of personal jurisdiction over them by a court in New Mexico a violation of due process because they had no ability to anticipate being haled into a court in New Mexico.  Plaintiff disputes that the Defendants have no contact with the forum arguing that the Defendants directed the activity at issue in this case, the alleged denial of Plaintiff's benefits, at Plaintiff who is a New Mexico domiciliary residing in California.  Additionally, Plaintiff argues that the various Defendants had sufficient regular contacts within New Mexico as to meet the due process minimum contacts requirements.

Defendant Intermex provides evidence in the form of an affidavit by Lorenzo that it has had no contacts with New Mexico.  Defendant Lorenzo provides evidence by his own affidavit that he has had only insignificant contacts with New Mexico unrelated to Plaintiff's allegations in that he traveled to New Mexico one time in 1995 and spent one night in the state.  He also states that he may have passed through New Mexico as a tourist or on a layover at an airport. Defendant Horwitz, P.C. provides evidence in the form of an affidavit by Horwitz that it had no contacts with New Mexico.  Defendant Horwitz provides evidence in the form of his own affidavit that he had insignificant contacts with New Mexico unrelated to Plaintiff's allegations in that he came to New Mexico once in 1975 to go backpacking, once in 1996 for a seminar, and once for a Board of Directors meeting of the Texas Society of Certified Professional Accountants. He stated he may also have passed through New Mexico as a tourist or on a layover at an airport. Defendant Glast provides evidence in the form of an affidavit by William G. Shaw that it has had no contacts with New Mexico.

Plaintiff counters these averments with evidence that the letters denying his requests for his 401k benefits in addition to other documents and material were mailed to Assed in New Mexico. He argues that this evidence shows that Defendant Intermex, as the 401k plan administrator, directed its activities in denying him access to his 401k plan benefits at New Mexico by causing to have mailed to Assed the letters of denial, including the letter dated January 17, 2004 that was mailed only to Assed. Plaintiff also urges that Defendants Horwitz, Horwitz, P.C., and Glast participated in this by actually composing the letters of denial and mailing them to Assed.

Plaintiff submitted evidence that Jose Ruelas, a deceased owner of 27.5% of Defendant Intermex stock, visited New Mexico some time prior to his death,[3] traveled with Plaintiff to Deming, New Mexico, and met with a Mr. Moore of Border Foods to discuss contracts between Border Foods and "one of Defendant Juan Carlos' [Lorenzo's] corporations that was canning beans and salsa products for Border Foods for distribution . . . in New Mexico." See Plaintiff's Response [Docket No. 23] at p. 8. Plaintiff attests that Lorenzo traveled to New Mexico in 1995 to conduct business on behalf of a company other than Defendant Intermex or Peppers.[4] Plaintiff

---

[3]It is unclear from the record when this alleged visit occurred. The record contains an appraisal of the Estate of Jose Ruelas. The appraisal itself is not dated but contains dates as late as 1997. A letter sent to Plaintiff with the results of the appraisal was dated February 26, 1998. Therefore, the Court may safely say, based on the record, that Mr. Ruelas died sometime before February 1998 and visited New Mexico sometime before that.

[4]Among his interests, Lorenzo indirectly owns 75% of 87% of (1) Intermex Products USA, Ltd. which is a limited partnership in which Defendant Intermex is a general partner with 1% ownership and Intermex Products of Delaware, Inc. is a limited partner with 99% ownership. Lorenzo indirectly owns 75% of 87% of La Torre Prepared Foods, Inc. which is a holding company that owns 100% of the stock in La Torre Prepared Foods of Delaware, Inc., which, in turn, is a limited partner with 99% ownership in La Torre Prepared Foods USA, Ltd. La Torre Prepared Foods USA, Ltd. produced labels for products marketed as Hatch Chile in New Mexico.

also submits that Lorenzo, through Peppers, had regular and systematic contact with New Mexico because Peppers conducted business in New Mexico and Lorenzo has an ownership interest in Peppers.[5]

Plaintiff's position is essentially that contact with New Mexico by shareholders of a corporation not acting on behalf of the corporation are automatically imputed to the corporation for purposes of minimum contacts analysis, that the contacts with New Mexico by a corporation are necessarily imputed to that corporation's shareholders for purposes of minimum contacts analysis, and that contacts with New Mexico by a person doing business on behalf of one company are automatically imputed to every company with which that person is affiliated for purposes of minimum contacts analysis. Plaintiff offers no authority for this supposition, and the Court is aware of no authority to support it. Plaintiff also urges that the combined contacts by these various persons and entities, after being imputed to Defendant Intermex and Defendant Lorenzo, show systematic and continuous contacts with New Mexico to render these Defendants subject to the general personal jurisdiction of this Court.

Plaintiff offers no authority or legal argument in support of his supposition that the acts of entities are imputed to shareholders and other entities and visa versa. The Court is not aware of any such authority. Because such imputed contact is the only basis for Plaintiff's argument that Defendants are subject to the exercise of general personal jurisdiction by this Court, the argument is rejected.

The fact that a company in which Defendant Lorenzo directly or indirectly owns stock or indirectly through stock ownership has some other ownership interest has conducted business in

---

[5] As noted earlier, Lorenzo owns 12.25% of a company that owns 70% of Peppers' stock.

New Mexico has no bearing on the issue of Defendant Lorenzo's contacts with New Mexico. Similarly, the fact that Lorenzo came to New Mexico in 1995 on behalf of a company other than Defendant Intermex is insufficient contact with New Mexico to provide the courts of New Mexico general in personam jurisdiction over Lorenzo. These contacts are also insufficient contact to show that Lorenzo should reasonably have anticipated being haled into court in New Mexico with regard to Plaintiff's 401k plan. Because this single visit and the interrelationships among Lorenzo and various companies are the only asserted contacts Lorenzo had with New Mexico, the Court finds that the acts of which Plaintiff complained did not arise out of any of Defendant Lorenzo's contacts with New Mexico, and this Court may not exercise specific personal jurisdiction over Defendant Lorenzo.

The fact that a shareholder of Defendant Intermex visited New Mexico at some time prior to February 1998 to conduct business on behalf of some other company does not bear on the issue of Defendant Intermex's contacts with New Mexico so cannot provide the basis for the Court's exercise of specific, much less general, personal jurisdiction over Defendant Intermex.

Plaintiff's allegation that Defendant Intermex, through its counsel in the Peppers Litigation, directed its denial of Plaintiff's request for benefit distribution to New Mexico presents a closer question on the issue of whether Defendant Intermex, Horwitz, Horwitz, P.C. or Glast have had sufficient contact with New Mexico to satisfy the minimum contacts requirement of due process. With this allegation, Plaintiff is asserting that these Defendants purposefully directed an activity at New Mexico, and that Plaintiff's grievances expressed in his Complaint arose from this purposeful activity.

In <u>World-Wide Volkswagen</u>, plaintiffs purchased a car in New York, drove it to Oklahoma, had an accident in Oklahoma, and sued the automobile retailer and wholesaler in an Oklahoma state court. <u>World-Wide Volkswagen v. Woodson</u>, 444 U.S. 286, 298 (1980). The World-Wide Volkswagen plaintiffs' argument for the exercise of personal jurisdiction over the defendants by the Oklahoma state court was that the defendants could have reasonably foreseen that a car sold by them would be driven to Oklahoma. The United States Supreme Court agreed that the act was foreseeable, but held that the plaintiffs' unilateral act of driving the car into Oklahoma could not satisfy the requirement of minimum contacts with the forum state. <u>Id.</u> at 298.

Plaintiff in this case essentially drove Defendants' correspondence to New Mexico by unilaterally choosing a New Mexico attorney to represent him with regard to his 401k plan benefits. Defendant Intermex and its counsel, Horwitz, Horwitz, P.C. and Glast, were required to communicate with Plaintiff's counsel of choice. Plaintiff cannot create personal jurisdiction over a defendant in a forum by hiring counsel in that forum; Plaintiff's unilateral act of choosing New Mexico counsel cannot create for these Defendants the minimum contacts necessary to satisfy the due process requirement for the exercise of personal jurisdiction. <u>See Id.</u> Thus, none of the Defendants have had sufficient minimum contacts with New Mexico for the purposes of this litigation.

It is unclear from <u>Peay</u> and its predecessors whether due process would permit the exercise of personal jurisdiction over a defendant with no contacts with a state if the other factors weigh in favor of the exercise of personal jurisdiction. However, the Court need not decide that issue in this case because the other factors do not weigh in favor of this court's exercise of

12

personal jurisdiction over the Defendants.  With regard to the inconvenience to the Defendants, the distance from Texas, the domiciliary or place of business of each defendant, to New Mexico is not excessive, and Defendants have access to counsel in New Mexico.  However, Defendants Horwitz, Horwitz, P.C. and Glast have shown that they do not routinely engage in interstate conduct, and their activities have little, if any, impact outside of Texas.  With regard to the probable location of discovery for the particular case, Defendants have shown that the vast majority of discovery will occur in Texas, and there is no indication that any discovery will occur in New Mexico.  Thus, Defendants have shown that litigating Plaintiff's ERISA claim in New Mexico would pose constitutionally significant inconvenience and would constitute an actual violation of their liberty interests.

**CONCLUSION**

　　IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss [Docket No.12] is GRANTED on the basis that this Court lacks personal jurisdiction over any of the Defendants, and the case is therefore DISMISSED WITHOUT PREJUDICE.

_____
UNITED STATES DISTRICT JUDGE